# EXHIBIT A

**EMPLOYEE NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT**

In consideration of my employment or continued employment by Capital Rx, Inc., a Delaware corporation (the "Company"), I, Ángela Cousineau                    , hereby agree as follows:

## 1.  Representations and Warranties

**1.1    No Conflict with any Other Agreement or Obligation.** I represent and warrant that I am not bound by any agreement or arrangement with or duty to any former employer or other person or company that would conflict with this Agreement or my employment with the Company. Except for any obligation described on Exhibit A attached to this agreement, I do not have any non-disclosure, confidentiality, non-competition or other similar obligations to any former employer or other person or company concerning proprietary, secret or confidential information I learned of during my previous engagement, employment, or association nor have I had any obligation to assign contributions or inventions of any kind to any former employer or other person or company. During my employment by the Company I will not improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person or company to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person or company to whom I have an obligation of confidentiality unless consented to in writing by that former employer or other person or company and disclosed to the Company in writing.

**1.2    No Infringement of Third Party Intellectual Property Rights.** I represent and warrant that the Inventions (as defined in Section 3 below) will not infringe any patent, copyright, trade secret, or other Proprietary Rights (as defined in Section 3 below) of any third party.

**1.3    No Open Source.** I represent and warrant that the Inventions (as defined in Section 3 below) will not include any open source software, except with the prior written consent of the Company.

## 2.  Confidential Information

**Definition of Confidential Information.** "Confidential Information" means any and all confidential and/or proprietary knowledge, data or information of the Company in any medium, whether disclosed orally, or in written, graphic or electronic form. By way of illustration, but not limitation, the term "Confidential Information" includes any and all:  (1) of the trade secrets, know-how, ideas, business plans, pricing information, the identity of any information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information; (2) information received from others that the Company is obligated to treat as confidential or proprietary; (3) other technical, operating, financial, and other business information that has commercial value, relating to the Company, its business, potential business, operations or finances, or the business of the Company's affiliates or customers, of which I may have acquired or developed knowledge or of which I may in the

{00916193.DOCX;1 }1

future acquire or develop knowledge of during my work for the Company, or from my colleagues while working for the Company; and (4) information regarding the skills and compensation of other employees of the Company, the names, backgrounds and personal financial and professional information of key personnel, personnel training and techniques and materials, however documented, compensation data and other personnel/payroll information, and conversations between persons associated with the Company, including but not limited to vendors and customers.

2.2 **Third Party Information.** I understand, in addition, that the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During the term of my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with my work for the Company, Third Party Information unless expressly authorized by an officer of the Company in writing.

2.3 **Protection of Confidential Information.** At all times during my employment and thereafter, I will hold the Confidential Information in the strictest confidence.  During my employment, I will use the Confidential Information only in the performance of my duties for the Company.  I will not use or disclose the Confidential Information, directly or indirectly, at any time during or after my employment by the Company except as to persons authorized by the Company to receive this information. I will not use the Confidential Information, directly or indirectly, at any time during or after my employment by the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interest of the Company. I will take all action reasonably necessary to protect the Confidential Information from being disclosed to anyone other than persons authorized by the Company.

2.4 **Return of Confidential Information.** When I leave the employ of the Company and at the Company's earlier requests, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, records and documents, together with all copies thereof, and any other material containing or disclosing any Inventions and Proprietary Rights (as defined below in Section 3), Third Party Information or Confidential Information of the Company (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium). At the time I return these materials I will acknowledge to the Company, in writing and under oath, in the form attached as Exhibit 2.3, that I have complied with the terms of this Agreement. I further agree that any property situated on the Company's premises and owned by the Company, including, without limitation, disks, computers, hard drives and other storage media, filing cabinets, lockers or other work areas, is subject to inspection by Company personnel at any time with or without notice.

## 3. <u>Inventions and Proprietary Rights</u>

3.1    **Definition of Proprietary Rights.**  The term "Proprietary Rights" means all trade secret, patent, copyright, mask work and other intellectual property rights throughout the world.

3.2    **Definition of Inventions.** The term "Invention" means:

a)    contributions and inventions, discoveries, creations, developments, improvements, works of authorship and ideas (whether or not they are patentable or copyrightable) of any kind that are or were, since the date of commencement of my employment with the Company, conceived, created, developed or reduced to practice by me, alone, or with others, while employed by the Company that are either (i) conceived during regular working hours or at my place of work, whether located at the Company, affiliate or customer facilities, or at my own facilities; or (ii) regardless of whether they are conceived or made during regular working hours or at my place of work, are directly or indirectly related to the Company's business or potential business, result from tasks assigned to me by the Company, or are conceived or made with the use of the Company's resources, facilities or materials, and;

b)    any and all patents, patent applications, copyrights, trade secrets, trademarks, domain names and other intellectual property rights, worldwide, with respect to any of the foregoing.

c)    Notwithstanding anything above in Section 3.2, Inventions, if any, patented or unpatented, which I made prior to the commencement of my employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, I have set forth on Exhibit B attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "Prior Inventions"). If disclosure of any such Prior Invention would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Prior Inventions in Exhibit B but am only to disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason. A space is provided on Exhibit B for such purpose. If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process or machine, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use and sell such Company product which incorporates the Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

3.2    **All Inventions and Proprietary Rights are Exclusively the Property of the Company.**

a)    With the exception of the Prior Inventions set forth on Exhibit B, I hereby assign and agree to assign in the future (when any such Inventions or Proprietary Rights are first

reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company. Inventions assigned to the Company, or to a third party as directed by the Company pursuant to this Section 3, are hereinafter referred to as "Company Inventions."

b)      I recognize that, in the event of a specifically applicable state law, regulation, rule, or public policy ("Specific Inventions Law"), this Agreement will not be deemed to require assignment of any invention which qualifies fully for protection under a Specific Inventions Law by virtue of the fact that any such invention was, for example, developed entirely on my own time without using the Company's equipment, supplies, facilities, or trade secrets and neither related to the Company's actual or anticipated business, research or development, nor resulted from work performed by me for the Company. In the absence of a Specific Inventions Law, the preceding sentence will not apply.

c)      During the period of my employment, I will promptly disclose to the Company fully and in writing all Inventions authored, conceived or reduced to practice by me, either alone or jointly with others. At the time of each such disclosure, I will advise the Company in writing of any Inventions that I believe fully qualify for protection under the provisions of a Specific Inventions Law; and I will at that time provide to the Company in writing all evidence necessary to substantiate that belief. The Company will keep in confidence and will not use for any purpose or disclose to third parties without my consent any confidential information disclosed in writing to the Company pursuant to this Agreement relating to Inventions that qualify fully for protection under a Specific Inventions Law. I will preserve the confidentiality of any Invention that does not fully qualify for protection under a Specific Inventions Law.

d)      I also agree to assign all my right, title and interest in and to any particular Company Invention to a third party, including without limitation the United States, as directed in writing by the Company.

e)      I acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101).

f)      I will assist the Company in every proper way to obtain, and from time to time enforce, maintain and renew United States and foreign Proprietary Rights relating to Company Inventions in any and all countries. To that end I will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as the Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Proprietary Rights and the assignment thereof. In addition, I will execute, verify, and deliver assignments of such Proprietary Rights to the Company or its designee. My obligation to assist the Company with respect to Proprietary Rights relating to such Company Inventions in any and all countries shall continue beyond the termination of my employment, but

{00916193.DOCX;1 }4

the Company shall compensate me at a reasonable rate after such termination of my employment for the time actually spent by me at the Company's request on such assistance.

In the event the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me. I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of any Proprietary Rights assigned hereunder to the Company.

## 4.  <u>Non-Solicitation; Non-Compete</u>

In order to protect the legitimate business interests of the Company and in consideration of the Company's willingness to provide me access to its Confidential Information and employment, I agree that during the term of my employment with the Company and for a period of one (1) year after the termination of my employment with the Company for any reason, I will not directly or indirectly, whether as owner, sole proprietor, partner, shareholder, director, member, consultant, agent, founder, co-venture partner or otherwise, (i) do anything to divert or attempt to divert from the Company any business, including, but not limited to, solicit or interfere with any of the Company's customers, clients, members, business partners or suppliers, (ii) solicit, induce, recruit or encourage any person engaged or employed by the Company to terminate his or her employment or engagement with the Company, or (iii) assist in, engage in or otherwise be connected to or benefit from any business competitive with that of the Company, whether directly or indirectly, and whether as an owner, stockholder, member, partner, joint venturer, officer, director, consultant, advisor, independent contractor, agent, or employee, provided, however, that I may own, as a passive investor, publicly-traded securities of any business competitive with that of the Company so long as such securities do not, in the aggregate, constitute more than three percent (3%) of any class of outstanding securities of such corporations.  For the purposes of this Agreement, a "business competitive with that of the Company" shall mean one that provides technology or services related to pharmacy benefits or pharmacy data services, excluding an operating business delivering medical insurance or medical health plans.

## 5.  <u>Miscellaneous</u>

5.1    **Interpretation and Scope of this Agreement.** Each provision in this agreement shall be interpreted on its own. If any provision is held to be unenforceable as written, it shall be enforced to the fullest extent permitted under applicable law. In the event that one or more of the provision contained in this agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States, then it shall (a) be enforced to the fullest extent permitted under applicable law, and (b) such unenforceability shall not affect any other provision of this agreement, but this agreement shall then be construed as if such unenforceable portion(s) had never been contained herein.

5.2    **Remedies.** I understand and agree that if I breach or threaten to breach any of the provisions of this agreement the Company would suffer immediate and irreparable harm and that monetary damages would be an inadequate remedy. I agree that, in the event of my breach or threatened breach of any of the provisions of this agreement, the Company shall have the right to seek relief from a court to restrain me (on a temporary, preliminary and permanent basis) from using or disclosing Company Confidential Information, Third Party Information, Proprietary Rights or Inventions or otherwise violating the provisions of this agreement, and that any such restraint shall be in addition to (and not instead of) any and all other remedies to which the Company shall be entitled, including money damages. The Company shall not be required to post a bond to secure against an imprudently granted junction (again, whether temporary, preliminary or permanent).

5.3    **Notification of New Employer.** In the event that I leave the employ of the Company, I hereby consent to the notification of my new employer of my rights and obligations under this Agreement.

5.4    **Successors and Assigns.** This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

5.5    **Survival.** The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee.

5.6    **Governing Law; Jury Waiver; Consent to Jurisdiction.** This agreement (together with any and all modifications, extensions, and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the State of New York applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof. For all matters arising from or relating to this Agreement and my employment with the Company, ("Agreement Matters"), I hereby (i) irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for the Southern District of New York and any state court in the State of New York that is located in New York County (and of the appropriate appellate courts from any of the foregoing) in connection with any legal action, lawsuit, arbitration, mediation, or other legal or quasi legal proceeding ("Proceeding") directly or indirectly arising out of or relating to any Agreement Matter; provided that a party to this Agreement shall be entitled to enforce an order or judgment of any such court in any United States or foreign court having jurisdiction over the other party, (ii) irrevocably waive, to the fullest extent permitted by law, any objection that I may now or later have to the laying of the venue of any such Proceeding in any such court or that any such Proceeding which is brought in any such court has been brought in an inconvenient forum, (iii) irrevocably waive, to the fullest extent permitted by law, any immunity from jurisdiction of any such court of from any legal process therein, (iv) irrevocably waive, to the fullest extent permitted by law, any right to a trial by jury in connection with a Proceeding, (v) covenant that I will not, directly or indirectly, commence any Proceeding other than in such courts, and (vi) agree that service of any summons,

complaint, notice or other process relating to such Proceeding may be effected in the manner provided for the giving of notice as set forth in this agreement.

5.7    **Entire Agreement; Amendments and Waivers.** This agreement (including Exhibits A and B attached hereto) represents the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and can be amended, supplemented, or changed and any provision hereof can be waived, only by written instrument signed by the party against whom enforcement of any such amendment, supplement, change or waiver is sought.

5.8    **Captions.** The captions and section headings in this agreement are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this agreement.

5.9    **At-Will Employment Relationship.** I agree and understand that my employment with the Company is AT WILL and that nothing in this Agreement shall confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause or advance notice.

5.10    **Counterparts; Binding Effect.** This agreement may be executed in counterparts, each of which shall be deemed an original agreement, but all of which together shall constitute one and the same agreement. Except as otherwise expressly provided herein, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

5.11    **Notices.** All notices and other communications given or made pursuant to this agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) five (5) days after having sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications to me shall be sent to the respective parties at their address as set forth on the signature page of this agreement, or in the Company's records, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Section and all notices to the Company shall be provided to the Company's headquarters, attention CEO. If notice is given to the Company, a copy (which shall not itself constitute notice) must also be sent to:

Ice Miller LLP
Attn:  Justin E. Klein, Esq.
1500 Broadway, 29th Floor
New York, NY 10036
justin.klein@icemiller.com

By signing this agreement below, (1) I agree to be bound by each of its terms, (2) I acknowledge that I have read and understand this agreement and the important restrictions it imposes upon me, and (3) I represent and warrant to the Company that I have had ample and reasonable opportunity to consult with legal counsel of my own choosing to review this agreement and understand its terms including that it places significant restrictions on me.

**EMPLOYEE:**

By:　　*Ángela Cousineau*
　　　　Ángela Cousineau (Jul 11, 2020 18:37 EDT)

Name:　　Ángela Cousineau

Address:　　2701 biscayne blvd apt 5131 Miami Fl 33137

Date:　　Jul 11, 2020

**Accepted by Company:**

**CAPITAL RX, INC.**

Name: Joseph Alexander

Title: COO

Date:

## Exhibit A

**Obligation to other Persons or Companies:**
[securely attach additional pages if necessary]

N/a
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## Exhibit B

**Prior Inventions:**
[securely attach additional pages if necessary]

N/a

Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements.  Accordingly, generally listed below are the proprietary rights and duties of confidentiality with respect to which I owe to the following party(ies):

{00916193.DOCX;1 }10

## Exhibit 2.3 FORM OF ACKNOWLEDGEMENT

My employment with Capital Rx, Inc. (the "Company") is now terminated. I have reviewed my Non-Disclosure and Invention Assignment Agreement with the Company, dated _____ ___, 20__ (the "Agreement"), and I swear, under oath, that:

- I have complied and will continue to comply with all of the provisions of the Agreement.

- I understand that all of the Company's materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium), whether or not they contain Confidential Information (as that phrase is defined in the Agreement), are and remain the property of the Company. I have delivered to authorized Company personnel, or have destroyed, all of those documents and all other Company materials in my possession.

_____
Signature

_____
Name (please print)

_____

_____
Address

STATE OF _____)
_____)ss.:
COUNTY OF _____)

     BE IT REMEMBERED, that on this _____ day of _____, 20__, before me, the subscriber, a notary public of the State of _____, personally appeared _____, who being by me duly sworn on his oath, deposed and made proof to my satisfaction that (s)he is the person named in the within instrument, to whom I first made known the contents thereof, and thereupon (s)he acknowledged that (s)he signed, sealed, and delivered the same as his/her voluntary act and deed for the uses and purposes therein expressed.

_____

[SEAL]                Notary Public

{00916193.DOCX;1 }11